UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HOLLY B. WADE | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 10-1956 |
| | * | |
| BORDELON MARINE, INC., ET AL. | * | SECTION "L"(3) |

## ORDER AND REASONS

### I.     Background

This case arises out of an accident off the coast of Panama City, Florida, in which sea lions were being transferred between the R/V MR. OFFSHORE, owned by Defendant Bordelon Marine, Inc., and Sea Lion Boat # 17, a rubber inflatable boat (RIB) owned and operated by the United States Navy.  Plaintiff Holly Wade alleges she was employed as a seaman and member of the crew of the R/V MR. OFFSHORE.  Plaintiff alleges that on January 13, 2009, she was involved in securing Sea Lion Boat # 17 to the OFFSHORE for the transfer operation when a mooring line parted and injured her.

Wade filed suit in this Court against Bordelon, the MR. OFFSHORE, and the United States, alleging that their negligence caused severe injuries to her left eye, face, head, neck and back that have prevented her from working for more than two years.  Jurisdiction against Bordelon is premised on the Jones Act.  Jurisdiction against the United States is premised on the Suits in Admiralty Act, or alternatively the Public Vessels Act.

The United States has moved to dismiss, or in the alternative, to transfer the case to the United States District Court for the District of Hawaii.  The United States argues that pursuant to the venue provision in the Public Vessels Act, this suit should have been brought in the district

where Sea Lion Boat # 17 was found at the time the suit was filed. The United States has submitted affidavits establishing that on July 16, 2010, the day the complaint was filed, Sea Lion Boat # 17 was "disassembled for transport purposes," stored on a pallet, and was being transported from one point in Hawaii to another by truck.[1] Accordingly, the United States argues that venue is proper only in the District of Hawaii.

Plaintiff opposes the motion, arguing that the Public Vessels Act does not apply to her claims against the United States and that venue is appropriate here. Alternatively, Plaintiff argues that if the Public Vessels Act does apply, the case should be transferred to the District Court for the Northern District of Florida and not to Hawaii.

Defendant Bordelon Marine does not comment on where the case should be transferred, but merely contends that the United States is a necessary and indispensable party to the action and should not be dismissed from the case. Bordelon stated at oral argument that it will follow the case wherever it may be transferred.

## II. Law & Analysis

The United States's motion raises two issues: first, whether the Public Vessel Act (PVA) governs Plaintiff's claim against the United States; and second, if the PVA applies, whether the PVA venue provision requires that this case be transferred either to the District of Hawaii or the Northern District of Florida.

### A.   Whether the PVA or the SAA governs Plaintiff's claims

The United States has waived sovereign immunity to admiralty suits through two different statutes. First, through the Suits in Admiralty Act (SAA), the United States has waived

---

[1] The affidavits also establish that before July 1, 2010, and after August 17, 2010, Sea Lion Boat # 17 was in San Diego, California.

sovereign immunity for admiralty claims to the extent that the claims could have been brought against a private person, vessel, or cargo. 46 U.S.C. § 30903(a). The PVA is an alternative waiver of sovereign immunity to civil actions seeking "damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). "Because of a curious historical anomaly," the SAA and PVA overlap to some extent. *See* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 20-1, at 371-73 (4th ed. 2004). Suits under the PVA are subject to the provisions of the SAA, to the extent the SAA provisions are not inconsistent. 46 U.S.C. § 31103. The Eleventh Circuit recently explained the interaction between these two statutes:

> Thus, together, the sovereign immunity waivers of the PVA and the SAA now cover all relevant admiralty claims involving public vessels. Claims seeking relief for damages caused directly by a public vessel, or by the negligent operation thereof, fall under the PVA. The SAA covers all remaining admiralty claims, including those simply *involving* public vessels.

*Uralde v. United States*, 614 F.3d 1282, 1286 (11th Cir. 2010) (quotation omitted) (emphasis in original); *accord Blevins v. United States*, 769 F.2d 175, 180 & n.2 (4th Cir. 1985); 2 Schoenbaum, *Admiralty and Maritime Law* § 20-1, at 372 ("The result is that when a claim involves a public vessel, both the SAA and the PVA apply, and that certain restrictive provisions of the PVA control where the two acts are inconsistent."). In *United Continental Tuna v. United States*, the Supreme Court held that if a claim is subject to the PVA, a plaintiff cannot avoid the requirements of the PVA simply by arguing that the SAA independently waives immunity to that same claim. 425 U.S. 164, 181 (1976).

    The Supreme Court has explained that "damages caused by a public vessel" encompasses not just cases where the vessel is the physical instrument of the harm but also cases in which "the actual cause [of the damage] is the negligence of the personnel in the operation of the ship." *Canadian Aviator v. United States*, 324 U.S. 215, 223-25 (1945). In *Canadian Aviator*, a Navy

3

vessel ordered a private steamship to follow it through a harbor.  The steamship complied and in following the Navy vessel struck a submerged shipwreck.  The Supreme Court held that this was damage "caused by a public vessel," even though the Navy ship never touched the merchant ship, because the damages resulted from "the negligence of the personnel in the operation of the ship."  *Id.* at 224.  Conversely, in *Uralde v. United States*, a Navy vessel in pursuit of a Cuban speedboat destroyed the speedboat's engine, causing it to stop abruptly and injure the passengers, one of them fatally.  614 F.3d at 1286.  A surviving spouse sued the United States, alleging that the Navy negligently failed to provide medical assistance; the allegedly negligent decision not to call for medical assistance was made by Navy officers on the shore and on a different, non-public vessel.  The Eleventh Circuit held that, on those facts, the Navy vessel involved in the chase was merely involved in the damages, but did not cause the damages because the allegedly negligent act, failure to order medical assistance, was not "committed *in the operation of the public vessel* (or even *on* a public vessel)."  *Id.* at 1286 (emphasis in original).

    Here, the complaint alleges that "a mooring line parted and struck [Plaintiff] during an operation involving securing of the rubber inflatable vessel ... to the R/V MR. OFFSHORE." Plaintiff identifies a number of allegedly negligent actions on the part of both Sea Lion Boat #17 and the MR. OFFSHORE, including that "the operator of the RIB failed to properly and safely navigate his vessel during the transfer operation," and that "the operators of the RIB, the R/V MR. OFFSHORE and the person in charge of the transfer operation were not attentive to their duties and were not maintaining proper and alert supervision."  Although Plaintiff argues that her claims are based on the transfer operation and merely "involve" Sea Lion Boat # 17, read as a whole the complaint undeniably alleges negligence arising out of the operation of the public

4

vessel.  Accordingly, the PVA governs Plaintiff's claims against the United States.

**B.    PVA Venue provision**

Through the PVA, "Congress has seen fit to establish some limitations as to where the Government is subject to suit." *Martin v. United States*, 323 F. Supp. 1131, 1133 (E.D. Pa. 1970).  Thus, the PVA states where venue will lie against the United States:

> (a) In general.--Suit under the PVA shall be brought in the district court of the United States for the district in which the vessel or cargo is found within the United States.
> (b) Vessel or cargo outside territorial waters.–If the vessel or cargo is outside the territorial waters of the United States–
> > (1) the action shall be brought in the district court of the United States for any district in which any plaintiff resides or has an office for the transaction of business; or
> > (2) if no plaintiff resides or has an office for the transaction of business in the United States, the action may be brought in the district court of the United States for any district.

46 U.S.C. § 31104(a).  The district where the vessel is found is the district in which the vessel is physically located at the time the complaint is filed. *E.g.*, *Sherman v. United States*, 246 F. Supp. 547, 548 (D. Mich. 1965) (transferring case to Eastern District of Wisconsin, where public vessel allegedly at fault was located when complaint was filed).

Thus, under the PVA, there is a succession of venue inquiries, rather than a choice for the plaintiff: first, if the vessel is found within a district when the complaint is filed, venue lies in that district.  Second, if the vessel is not found within the territorial waters of the United States, then venue lies where any plaintiff resides (or any district, if no plaintiff resides in any district).[2]

As discussed above, the United States has established by uncontroverted affidavits that

---

[2]Even if the PVA did not apply to Plaintiff's claim against the United States, then the SAA venue provision still does not make venue proper in the Eastern District of Louisiana.  Under the SAA, venue lies either where any plaintiff resides *or* where the vessel is found, at the plaintiff's discretion.  46 U.S.C. § 30906(a).  Plaintiff resides in Florida.  Thus, it seems that venue was never appropriate as to the United States in the Eastern District of Louisiana.

on July 16, 2010, Sea Lion Boat #17 was disassembled and on a pallet on a truck in Hawaii. Plaintiff has not suggested how discovery would allow her to challenge these facts. On the basis of these affidavits, the United States contends that Sea Lion Boat # 17 was found in the District of Hawaii when suit was filed and that venue under the PVA is proper only in Hawaii.

Plaintiff responds that because Sea Lion Boat # 17 was deflated and packed up on a pallet on land on the day the complaint was filed, it was not a "vessel" that could be found in the District of Hawaii because it was not capable of navigation at that moment. Plaintiff cites no authority for that proposition. The United States, on the other hand, argues that Sea Lion Boat #17, though temporarily disassembled on land, remained "practically capable of maritime transportation, regardless of its ... state of transit at a particular moment." *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 497 (2005).

The parties have not referred the Court to any authority addressing the vessel status of a deflated inflatable boat, and the Court's own research has not identified any cases on point. Nonetheless, the Court agrees with the United States that Sea Lion Boat # 17 likely remained a vessel at the time suit was filed, or at the very least that there are questions of fact which militate against a legal determination of the boat's status. The affidavits tend to show that in this case, the boat could have been quickly restored to maritime transportation, and in fact was restored to maritime transportation in Pearl Harbor prior to its transport back to San Diego.[3] Assuming that the boat retained vessel status and was found in the District of Hawaii, then pursuant to §

---

[3]The Court does not purport to offer a categorical answer of whether or not a deflated inflatable boat is always or never a vessel. The Court can imagine a number of factors that may contribute to whether or not a particular rubber boat is a vessel at any given time, including the length of time the boat is deflated and stored or any intent to restore the boat to service could be significant. Regardless, these exquisite details are not fleshed out at this stage in this case. Furthermore, as discussed below, the Court need not conclusively determine whether the boat was or was not a vessel to resolve the United States's motion.

31104(a) venue would be appropriate in Hawaii.

The Court's analysis does not end there, however.  Although Sea Lion Boat # 17 likely remained a vessel found within the District of Hawaii at the time the complaint was filed, it was deflated and loaded on a pallet on the ground.  It was not in any water, let alone the territorial waters of the United States.  Therefore, the boat was also "outside the territorial waters" of the United States at the time the complaint was filed, and pursuant to the plain language of § 31104(b), suit "shall be filed" in the district where Plaintiff resides.  Plaintiff has stated in her briefing that she resides within the Northern District of Florida, Panama City Division.

Congress likely intended subparts (a) and (b) to be mutually exclusive and for subpart (b) to apply only as a secondary venue if subpart (a) was not first satisfied.  For the vast majority of cases, Congress achieved its goal:  if a vessel is found in a district it will not simultaneously be outside territorial waters at the same time.  But this case is *sui generis*.  The court is analyzing the status of the boat not at the time it was allegedly involved in Plaintiff's injuries off the coast of Florida, but rather the entirely unrelated status of the boat at the time the complaint was filed, when it fortuitously happened to be deflated in a box in Hawaii.  Congress undoubtedly did not have this peculiar confluence of facts in mind when it drafted the PVA venue provision in 1925, and the Court does not imagine that circumstances align in this fashion very often.  Nonetheless, the plain language Congress used creates a narrow overlap between the potential applicability of subparts (a) and (b) for an inflatable boat that is a vessel within a district but not technically in territorial waters, and this case falls within that overlap.

Because § 31104(b) applies and venue is appropriate in Florida whether or not subsection (a) applies, the Court does not need to resolve whether or not the boat was a vessel at the time complaint was filed.  Even if Hawaii was an additional proper venue, the Court would transfer

7

this case to Florida.[4] Plaintiff resides in Florida and the accident occurred in Florida, making it a convenient as well as proper venue. Declining to transfer the case to Hawaii does not inconvenience any party, because Sea Lion Boat # 17 is no longer there and Hawaii has no other connection to the case.

### III.  Conclusion

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion to dismiss or transfer (Rec. Doc. 16) is GRANTED IN PART. This civil action is transferred pursuant to 28 U.S.C. § 1406 to the United States District Court for the Northern District of Florida, Panama City Division.

New Orleans, Louisiana, this 4th day of February, 2011.

                                                     U.S. DISTRICT JUDGE

---

[4]Pursuant to 28 U.S.C. § 1406, the Court "shall dismiss" if the case is filed in the wrong venue, but can transfer "if it be in the interest of justice." Because the accident occurred on January 13, 2009, over two years ago, the Court will not inject a statute of limitations issue into this case by dismissing it.